IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MARY TORMA-KELLY

                        Plaintiff,

        vs.                                        Civil Action No.
                                                   6:03-CV-0802 (LEK/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security,

                        Defendant.

_____

APPEARANCES:                               OF COUNSEL:

FOR PLAINTIFF:

HILL LAW FIRM                              PETER W. HILL, ESQ.
P.O. Box 823
384 Main St.
Oneonta, NY 13820-0823

FOR DEFENDANT:

HON. GLENN T. SUDDABY                      WILLIAM H. PEASE, ESQ.
United States Attorney for the             Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL                  BARBARA L. SPIVAK, ESQ.
Social Security Administration             Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                         THOMAS A. GRABEEL, ESQ.
                                           Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Mary Torma-Kelly, who suffers both mental and physical impairments including carpel tunnel syndrome in both wrists, and chronic neck and upper back pain, which she attributes principally to a work related injury and having been involved in two separate automobile accidents, has commenced this proceeding to challenge an administrative determination that she is not disabled, and thus lacks eligibility to receive Social Security disability insurance benefits.  Plaintiff contends that the finding of the administrative law judge ("ALJ") who heard the matter, to the effect that she is capable of performing a full range of light work activity – a finding which was pivotal to the determination of no disability – is not supported by substantial evidence, and overlooks the opinions of several medical professionals including her treating physician.  Plaintiff also asserts that the existence of mental impairments and the limitations associated with them preclude her from performing a full range of light work activity, thereby lending support to her claim that the ALJ erred in applying that finding to the applicable medical-vocational guidelines (the "grids") set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P.

App. 2.  Plaintiff seeks a reversal of the Commissioner's determination and a remand of the matter to the agency, with a directed finding of disability for calculation of benefits only or, alternatively, for further consideration on the merits.

Having reviewed the record now before the court, in light of plaintiff's arguments, I find that plaintiff's nonexertional limitations stemming from her mental impairments do not significantly limit the range of work which she can perform.  From an exertional standpoint, however, I find the ALJ's determination that the Commissioner carried her burden of establishing that plaintiff retains the residual functional capacity ("RFC") to perform a full range of light work is not supported by substantial evidence, and overlooks contrary opinions of her treating physician as well as subjective testimony which was discounted without proper explanation.  I therefore recommend reversal of the Commissioner's determination.

I.    BACKGROUND

Plaintiff was born on May 27, 1960, and lives together with her husband, to whom she was married in August of 1984, in Walton, New York.  Administrative Transcript at p. 39, 112, 503.[1]  At the time of her first

---

[1]      Portions of the administrative transcript, Dkt. No. 5, which was filed by the Commissioner together with the agency's answer, will be cited in this decision as

hearing, which was conducted on April 23, 1999, plaintiff had earned

associate degrees from the Clinton Community College, located in

Plattsburgh, New York, in the fields of humanities and social science as

well as registered nursing.  AT 503-04.  Since achieving those degrees

plaintiff has continued to take college courses, in the hope of receiving a

bachelors degree in the field of nursing.  AT 34.

The plaintiff, who is not presently working, *see* AT 29, was employed

for several years principally as a staff registered nurse in a hospital

setting.  AT 153, 504.  In that position, plaintiff was required to perform

typical nursing functions, including to assist in lifting patients.  AT 504.

On March 22, 1996, while driving to work, plaintiff was involved in a

motor vehicle roll over accident  AT 141, 506.  As a result of that incident

plaintiff suffered several injuries, including a cervical strain for which she

sought treatment from Dr. Carlton J. Rule, whom she had previously seen

for other medical conditions including carpal tunnel syndrome, beginning

in March of 1996 and extending through at least to the time of her second

hearing in June of 2001.  *See* AT 178-85, 345-57.

In June of 1996, plaintiff returned to work in a light duty nursing

---

"AT ___."

position.  AT 141, 505.  Shortly after returning to work, however, plaintiff sustained additional injuries to her shoulder and neck area while assisting other medical personnel to revive a patient.  *Id.*  Plaintiff has since been out of work and is receiving substitute compensation, apportioned sixty-five percent to the injuries sustained in the motor vehicle accident, receiving no-fault benefits as a result of the encounter, and thirty-five percent to the work related injury for which she is receiving ongoing workers' compensation benefits.[2]  AT 507.

In addition to her back condition plaintiff has suffered from bilateral carpel tunnel syndrome, with a higher degree of symptomology having been experienced in plaintiff's left wrist.  AT 412-13.  A left carpel tunnel release surgery was performed on June 27, 2000 by Dr. Ernest Levy, M.D., a neurosurgeon, with apparent relief resulting from the operation.  AT 427-30.  Indications are that plaintiff has continued to experience pain and numbness in her right hand, however, leading Dr. Levy to contemplate a similar release procedure to address that issue.  AT 409.

Despite the passage of time since her accident and work injury, plaintiff has continued to suffer from pain which she describes as daily

---

[2]     Plaintiff was involved in a second, rear end collision on July, 1999 and suffered additional cervical injuries as a result of that accident.  AT 29-30.

and often severe, including in her shoulders, upper back and neck, with the low back pain extending into her legs, and additionally has experienced halo headaches. AT 36, 512-13. Plaintiff has been prescribed and continues to take Darvocet, a pain killer, as well as Soma, a muscle relaxant, to address her issues, supplemented by Extra Strength Tylenol. AT 37, 345, 508. Plaintiff has also been prescribed Neurontin, which she only takes at night. AT 36. Plaintiff continues to address her back problem by regularly seeing a chiropractor. AT 36. Plaintiff reports that the medications which she takes make her dizzy and tired. AT 37, 510. Because of her neck injury plaintiff wears a cervical collar, including when driving. AT 38-39, 54.

Plaintiff has seen a variety of health care professionals for her physical conditions as well as some mental issues which have arisen in part as a result of those injuries. Among those treating sources is Dr. Carlton Rule, plaintiff's primary care provider. Plaintiff has also addressed her persistent pain complaints through the Southern Tier Pain Management Center, to which she was referred in or about March of 1998 for a comprehensive pain management program. AT 283-300, 344. As a result of that evaluation plaintiff was diagnosed as suffering from "complex

whiplash injury including left thoracic outlet, bilateral shoulder strain, lumbar strain and piriformis syndrome[,]" as well as probable secondary depression.  AT 286.  A regimen of pain management was devised for the plaintiff to include physical therapy, aquatic therapy, psychological counseling, and vocational/occupational assistance.  *Id.*

In addition to seeing Dr. Rule, plaintiff has also treated over time with professionals at the Orthopedic Institute of Central New York, located in Norwich, New York, including Drs. James M. Lovelace and Anthony D. Cicoria.  AT 197-224.  Plaintiff returned to the center, after having been treated there two years earlier for a fractured left ankle, as a result of the injuries suffered in the automobile accident two months earlier.  *See* AT 222.  Drs. Lovelace and Cicoria have diagnosed the plaintiff principally as suffering from cervical strain, with bilateral carpel tunnel syndrome often added as a secondary diagnosis.  AT 197-224.

In addition to these treating sources, plaintiff and/or plaintiff's records were reviewed by a variety of consultants, both at the request of the agency and in connection with her workers' compensation claim.  An evaluation of plaintiff's functional capacity was conducted in December 9, 1997 by SECO Industrial Rehabilitation, Inc. utilizing the Blankenship

Evaluation System.  AT 301-15.  Based upon that evaluation several

limitations were identified, leading both SECO and, after reviewing the

report, Dr. Cicoria, to conclude that plaintiff is incapable of working.  *Id.*

*see also* AT 316.  As a result of the recommendation from SECO that she

undergo a pain management evaluation, Ms. Torma-Kelly was referred to

the Southern Tier Pain Management Center.  AT 316.

Plaintiff underwent a personality and organicity evaluation by Mary

Ann Moore, PsyD, of Industrial Medicine Associates, P.C., in December of

2000.  AT 451-56.  Based upon her evaluation and testing, which included

administering of the Wechsler Adult Intelligence Scale – Revised III

("WAIS-III") and Bender Visual-Motor Gestalt tests, Dr. Moore noted an

Axis I diagnosis of major depressive disorder without psychotic features,

post-traumatic stress disorder, and cognitive disorder not otherwise

specified ("NOS").  AT 455.  In her report Dr. Moore also reported an Axis

III diagnosis which included, *inter alia*, cervical strain and carpel tunnel

syndrome.  *Id.*  Dr. Moore noted that the Zoloft, which had been

prescribed to assist plaintiff in dealing with her depression, appeared to

have helped stabilize the severity of that condition.  *Id.*

_____Plaintiff's mental condition was also evaluated in January of 2001 by

Nevilla Monzano, M.D., a psychiatrist.  AT 459-62.  Dr. Monzano's

diagnoses included depressive disorder NOS, and post traumatic stress

disorder, with a note that communication disorder NOS, mixed receptive

language disorder, expressive language disorder, and dementia due to

head injury should all be ruled out.  AT 461.  Based upon her evaluation

Dr. Manzano recommended that plaintiff continue taking Zoloft for her

depression, though suggesting that perhaps the dosage should be

increased, and recommended a referral to a counselor for assistance in

coping with the stressors related to her accident and marital problems.[3]

AT 461.

An evaluation regarding the plaintiff's RFC was performed by

Deborah Bostick, M.D. on August 13, 1997.  AT 225-32.  Based upon her

assessment Dr. Bostick found that plaintiff was capable of lifting up to ten

pounds frequently and twenty pounds occasionally; could sit, stand and/or

walk for six hours in an eight hour workday, with normal breaks; and had

unlimited capacity for pushing and pulling.  *Id.*  Dr. Bostick also concluded

that plaintiff was capable of climbing, balancing, stooping, kneeling,

---

[3]     There is indication in this and other reports in the record that at the
relevant times plaintiff was experiencing marital discord, and that those difficulties
served to contribute to or aggravate the mental impairments from which she was found
to be suffering.  *See*, e.g., AT 324, 452, 461.

crouching and crawling occasionally, and did not discern the existence of any other physically limiting characteristics.  *Id.*  That RFC evaluation was reviewed and approved by another state agency consultant, Donna M. White, M.D., on November 10, 1997.  AT 232.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before The Agency

Plaintiff applied for disability insurance benefits on May 20, 1997, alleging a disability onset date of March 22, 1997.[4]  AT 112-14.  Plaintiff's application was denied, both initially and on reconsideration.  AT 43, 46, 49-51

At plaintiff's request a hearing was conducted on April 23, 1999 before ALJ J. Lawson Brown to address the denial of her applications for disability insurance benefits.  *See* AT 503-20.  Following that hearing, ALJ Brown rendered a decision dated May 20, 1999 finding that the plaintiff was not disabled, and therefore upholding the denial of benefits.  AT 85-

---

[4]    The significance of the onset date attributed to her disability, which is exactly one year after her first automobile accident and more than eight months following her reinjury after returning to light duty work, is not apparent from the record. The fact that this may have been a typographical error, or an oversight on plaintiff's part, is suggested by the Commissioner's brief, which attributes plaintiff's disability onset to March 22, 1996, the date of her accident.  *See* Defendants' Brief (Dkt. No. 7) at 1.

92.  ALJ Brown's decision was based upon his finding that plaintiff retains the RFC to perform a full range of light work and, applying that finding to the grids, and in particular Rule 202.21 thereof, a finding of no disability was warranted.  *Id.*

Plaintiff's challenge of the ALJ's decision to the Social Security Administration Appeals Council resulted in reversal of the hearing officer's determination on October 20, 2000, with a corresponding remand of the matter for further consideration.  AT 102-03.  In its reversal order the Appeals Council identified two critical errors, including the ALJ's failure to perform a function-by-function assessment of the claimant's ability to perform work related physical and mental activities, and his rejection of opinions from plaintiff's treating physicians, including Carlton Rule, M.D. and Anthony D. Cecoria, M.D., based upon the lack of objective medical evidence, without recontacting those treating sources for further evidence or clarification of their opinions.  AT 102.  On remand, the ALJ was instructed to obtain additional evidence regarding the claimant's impairments and to more thoroughly address the plaintiff's maximum RFC, with appropriate citations to the record.  *Id.*

Following the Appeals Council's remand ALJ Brown conducted a

-11-

second hearing on June 8, 2001.  AT 28-40.  In anticipation of that

hearing, additional records were sought and obtained by the agency,

including from Dr. Rule and Dr. Levy, with Catskill Neuroscience and

Radiology Associates.  AT 372-445.  After the close of that hearing, at

which plaintiff was also represented by counsel, ALJ Brown issued a

second decision, dated April 30, 1997, again finding that the plaintiff was

not disabled at the relevant times.  AT 16-23.  In his decision, ALJ Brown

applied the governing five part disability test, finding that plaintiff had not

engaged in substantial gainful activity since the onset date attributed by

her to her disability, and that the proof demonstrated the existence of a

medically determinable physical impairment, or combination thereof, of

sufficient severity to restrict her ability to perform basic work activities.  AT

17.  Addressing plaintiff's claimed mental impairments, in contrast, ALJ

Brown concluded "that the record does not clearly establish that the

claimant has a severe mental impairment which results in more than

minimal limitations in her ability to perform basic work-related activities[,]"

placing particular emphasis on a report of Dr. Moore, a psychologist, and

rejecting the somewhat conflicting report of Dr. Manzano, a psychiatric

consultant.  AT 18-19.  The ALJ went on to find that plaintiff's physical

-12-

impairments would not, either singly or in combination, meet or equal any of the presumptively disabling conditions listed in the governing regulations.  *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1.  ALJ Brown concluded, at step four of the analysis, that plaintiff's physical impairments prevent her from performing the exertional requirements, characterized by him "as requiring very heavy physical exertion", of her past relevant work as a nurse.  AT 19.

Proceeding to step five, ALJ Brown reviewed the evidence and determined that plaintiff retains the RFC to perform a full range of light work activity.  AT 19-22.  ALJ Brown's RFC assessment is based heavily upon an independent medical examination ("IME") conducted in May of 1997, at the request of the workers' compensation carrier for plaintiff's employer.  AT 19, 21.  In that report the examining physician, Dr. Eugene Branovacki, an orthopedic surgeon, acknowledged the severity of plaintiff's injuries, including those sustained on July 2, 1996, but determined that she was not disabled and thus was capable of returning to work.  AT 186-87.  In making his RFC finding, ALJ Brown rejected contrary expressions of opinion from Dr. Rule, plaintiff's treating physician.  AT 20-21.  ALJ Brown also rejected plaintiff's subjective testimony

regarding the limitations imposed by her chronic pain and wrist conditions, determining that her complaints were not clinically well-supported.  AT 21-22.  Applying his RFC finding to the grids, the ALJ once again found that a finding of no disability was warranted.  AT 22-23.

The ALJ's determination became final on May 9, 2003, when the Appeals Council rejected plaintiff's application for review of ALJ Brown's second decision.  AT 8-10.

### B.    Proceedings Before This Court

Plaintiff commenced this action on June 30, 2003.  Dkt. No. 1.  Issue was thereafter joined by the Commissioner's filing of an answer, accompanied by an administrative transcript of the proceedings before the agency, on December 24, 2003.[5]  Dkt. Nos. 4, 5.  With the filing of briefs on behalf of the plaintiff on February 2, 2004, Dkt. No. 6, and the Commissioner on March 25, 2004, Dkt. No. 7, the matter is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

---

[5]      Some delay in this action was occasioned by the agency's inability to locate the tape recording made of the first hearing held on April 23, 1999, resulting in a stipulated remand to the agency pursuant to sentence six of 42 U.S.C. § 405(g) on November 13, 2003.  Dkt. No. 3.

District of New York Local Rule 72.3(d).[6]  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Scope Of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been

---

      [6]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

applied and the ALJ's findings are supported by substantial evidence,
those findings are conclusive, and the decision should withstand judicial
scrutiny regardless of whether the reviewing court might have reached a
contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586;
*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13
F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. §
405(g).

The term "substantial evidence" has been defined as "'such relevant
evidence as a reasonable mind might accept as adequate to support a
conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,
1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,
229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more
than a mere scintilla'" of evidence scattered throughout the administrative
record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To
determine on appeal whether an ALJ's findings are supported by
substantial evidence, a reviewing court considers the whole record,
examining the evidence from both sides, because an analysis of the
substantiality of the evidence must also include that which detracts from
its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v.*

*NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Secretary of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

B.     Disability Determination: The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.] " 42 U.S.C. § 423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then

-18-

the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

      C.    The Evidence In This Case

          1.    Mental Impairment

As a threshold matter, plaintiff maintains that ALJ Brown did not

properly consider her mental impairments, and their limiting effects on her

ability to perform in a workplace setting.  In this regard, plaintiff takes

issue with the hearing officer's finding that her mental condition results in

only minimal limitations upon her ability to perform basic work activities.

"An impairment or combination of impairments is not severe if it

does not significantly limit [a claimant's] physical or mental ability to do

basic work activities."  20 C.F.R. § 404.1521(a).  The regulations define

basic work activities to include "the abilities and aptitudes necessary to do

most jobs[,]" going on to provide examples which, in the case of mental

impairments, would include:

*  *  *

(3)    Understanding, carrying out, and
       remembering simple instructions;

(4)    Use of judgment;

(5)    Responding appropriately to supervision, co-
       workers and usual work situations; and

(6)    Dealing with changes in a routine work
       setting.

20 C.F.R. § 404.1521(b).

Reports in the record, including those from Drs. Moore and

Manzano, reflect a lack of organicity, and average intellectual functioning,

on the part of plaintiff.  AT 453-54, 461.  These findings draw support from

plaintiff's success in attending college and achieving two associate

degrees.  As for plaintiff's documented history of depression, the record

reflects that it has stabilized and improved somewhat, and is being

adequately dealt with through medication, principally Zoloft.  AT 451, 461.

Completing an agency medical assessment form regarding plaintiff's

mental ability to perform work related activities, Drs. Moore and Manzano

rated the plaintiff as either good or excellent in many categories including,

*inter alia*, the abilities to understand and remember and carry out

instructions, to make simple work related decisions, and to work with or

near others without being distracted.  AT 457, 463.  Plaintiff's capacity to

get along with co-workers and peers was rated by both professionals as

excellent, as was her ability to adhere to basic standards of neatness and

cleanliness.  AT 458, 464.  While Dr. Manzano did note a poor prognosis

in the area of ability to travel in unfamiliar places or use public

transportation, as well as to maintain attention and concentration for

extended periods, Dr. Moore assessed plaintiff's abilities in those areas as

fair.  *Compare* AT 458 *with* AT 464.

As support for his finding that plaintiff's diagnosed mental

impairments do not significantly restrict her ability to perform work

functions, ALJ Brown also drew upon notes of Dr. Robert B. Perna who,

he states, treated the plaintiff.  *See* AT 18.  Upon close review of the

record, however, I could only find one record generated by Dr. Perna, who

apparently is affiliated with the Southern Tier Pain Management Center,

relating to an examination of the plaintiff in or about March of 1999.  AT

344.  Dr. Perna's letter report to plaintiff's counsel regarding that visit does

not reflect any indication of extensive abnormality.  *Id.*

Considering the record as a whole, I find that the ALJ's

determination that plaintiff does not suffer from a severe mental

impairment which results in more than minimal limitations upon her ability to perform basic work activities is supported by substantial evidence.

### 2.   The ALJ's RFC Finding/Treating Physician

The lynchpin of the ALJ's finding of no disability is his determination that plaintiff retains the RFC to perform a full range of light work.[7]

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC finding is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a

_____

[7]      Light work is defined by regulations as follows:

> Light involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, and when it involves sitting most of the time with some pushing or pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially of these activities.  In someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567 (b).

regular and continuing basis.  *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess the person's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F.Supp.2d at 150 (citing *Ferraris*, 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

In making his RFC determination, the ALJ rejected a functional assessment completed by plaintiff's treating physician, Dr. Carlton Rule, on January 29, 1999, suggesting plaintiff's ability to perform less than a

full range of even sedentary work, *see* AT 349-57, in favor principally of an

IME conducted in May 7, 1997 at the request of a workers' compensation

carrier for plaintiff's former employer.  *See* AT 186-90.  In that report, Dr.

Gene Branovacki opined that plaintiff is not disabled.  *Id.*  To the extent

that the opinion addresses the ultimate question of disability, a matter

specifically reserved to the Commissioner, 20 C.F.R. § 404.1527(e)(1);

*Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999), and is given in the

context of a workers' compensation proceeding, where a significantly

different disability standard applies than under the Act, *see Gray v.*

*Chater*, 903 F.Supp.2d 293, 301 (N.D.N.Y. 1995) (Koeltl, J.), it is not

deserving of weight.

_____Ordinarily, the opinion of a treating physician is entitled to

considerable deference, provided that it is supported by medically

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.[8]  *Veino*, 312 F.3d at 588;

---

[8]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . If we find that a
> treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is
> well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other

*Barnett*, 13 F. Supp.2d at 316.  Such opinions are not controlling, however, if contrary to other substantial evidence in the record.  *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Id.*

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  See *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for

---

substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions. *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp.2d at 316-17.

In his RFC assessment Dr. Rule, plaintiff's treating physician, opines that she is unable to lift in excess of five pounds; can stand and/or walk less than two hours per day; and is limited to sitting six hours per day, with additional postural limitations due to her chronic pain. AT 356. As the ALJ acknowledges, this finding is inconsistent with the plaintiff's ability to perform even a full range of sedentary work.[9] AT 20. The ALJ bases his rejection of that treating source opinion upon the lack of supporting objective medical evidence in the record. AT 20-21.

Despite its rejection by the ALJ, Dr. Rule's RFC assessment draws support from several other excerpts in the record, including the functional capacity analysis performed by SECO Industrial Limitation, Inc. in December of 1997. AT 301-02. That report, which led Dr. Cicoria, another treating source, to note that plaintiff "is unable to work at this time" and to refer her for pain management assessment, *see* AT 316, noted

---

[9]     If plaintiff were found capable of performing a full range of sedentary work, the grids would still compel a finding of no disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App.2 Rule 201.28.

plaintiff's limitation in continuous sitting, standing and walking to one hour, and reaching and climbing to occasional bases only.  AT 301.  That report also noted that bending, squatting, kneeling and crawling should not be performed by the plaintiff, and that she is capable only of occasional lifting not to exceed fifteen pounds, with no more than five pounds being lifted frequently.  AT 301.

Based upon the foregoing, I conclude that the rejection of Dr. Rule's opinions regarding plaintiff's RFC is neither well supported nor properly explained in the ALJ's decision, thus requiring that the finding of no disability be set aside.[10]

### 3.   Plaintiff's Subjective Pain Complaints

During both of her hearings, plaintiff described for the ALJ the pain which she endures and the limitations associated with that pain.  In the first hearing plaintiff testified that she experiences daily pain in her back and shoulder blades, characterized as severe on some days, as well as numbness in both hands which causes her to drop things and requires her

---

[10]   Plaintiff has also been diagnosed as having asthma.  *See*, *e.g.*, AT 37, 327.  That condition, which appears to have been aggravated by exposure to fumes during the course of pool therapy, appears to be stable and has been well controlled through the use of medication.  AT 37, 327-31, 508.  As such, plaintiff's asthma does not appear to be relevant, for the purposes of ascertaining her RFC.

to wear splints.  AT 513-14.  Plaintiff has no upper body strength, and is unable to lift even a gallon of milk.  AT 509.  Plaintiff cannot pull, reach, or stand for long periods of time, and when sitting requires head support.  AT 509.

During the second hearing plaintiff elaborated on the pain which she endures, indicating that it extends across her shoulders and up her back into her neck, resulting also in the experiencing of halo headaches.  AT 36.  Plaintiff also continues to experience left arm pain even after the left carpel tunnel release, and has difficulty standing and lifting.  AT 30, 36.  Plaintiff also testified that the medications which she takes results in adverse side effects which include dizziness and fatigue.  AT 37.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain*.  See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that

discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[11]  *Barnett*, 13 F. Supp.2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and

---

[11]  In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dept. of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984).

It appears likely, as plaintiff asserts, that she does suffer from some degree of discomfort as a result of her physical conditions.  The fact that

she suffers from discomfort, to be sure, does not automatically qualify her as disabled, since "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

The ALJ's rejection of plaintiff's subjective complaints in this case, however, does not comport with the regulations in that it does not disclose to any specific degree the grounds to any specific degree for discounting that testimony.  Instead ALJ Brown simply relies heavily upon Dr. Branovacki's finding that plaintiff was not disabled "by any state of imagination."  AT 187.  I therefore find the ALJ's rejection of plaintiff's objective testimony regarding the pain which she experiences and the limitations imposed by that pain, as well as the side effects with respect to her medication, is neither properly explained, nor well supported.[12]  I find that in light of these perceived deficiencies the ALJ's RFC determination, which is central to his finding of no disability, is not supported by substantial evidence.

D.    Scope of Remand

In light of my finding that the ALJ's determination of no disability is

---

[12]    Indeed, the ALJ's decision makes no reference to plaintiff's testimony regarding the side effects of her medication.  Those side effects are documented in several treatment notes of plaintiff's physicians. *See, e.g.,* AT 328.

not supported by substantial evidence, I recommend that this matter be remanded to the agency. The question remains, however, regarding the scope of any remand of the matter to the agency, and specifically whether, as plaintiff requests, the remand should be accompanied by a directed finding of disability.

As noted by the Second Circuit,

> [w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (2d Cir. 1996) ("we cannot uphold a decision . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result"). Conversely, if application of the correct legal standard can only "lead inexorably to a single conclusion," remand is unnecessary. *Johnson*, 817 F.2d at 986.

Plaintiff's disability application has been pending since May of 1997. Moreover, despite a remand of the matter to him with very specific directions from the Appeals Council, ALJ Brown nonetheless failed to give

-33-

proper consideration to the relevant factors and provide a detailed

explanation of the basis for his rejection of highly relevant evidence,

including opinions of plaintiff's treating physician.  Under these

circumstances, and in the interest of justice, I recommend that the matter

be remanded to the agency with a directed finding of disability for the sole

purpose of calculation of benefits.  *See Curry v. Apfel*, 209 F.3d 117, 124

(2d Cir. 2000) (ordering remand for sole purpose of calculation of benefits

when Commissioner had failed to meet burden at step five and when

remand could have resulted in further substantial delay to resolution of

application that had been pending for six years); *see also Butts v.*

*Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004) (discussing *Curry*).

IV.    SUMMARY AND RECOMMENDATION

        The Commissioner's finding of no disability, which the plaintiff now

challenges, is wholly dependent upon a finding by the ALJ hearing the

matter that plaintiff retains the RFC to perform a full range of light work.

That finding is flatly contradicted, however, by the opinion of plaintiff's

treating physician as well as her subjective testimony regarding the

limitations which she experiences as a result of the chronic pain from

which she suffers.  Because the ALJ's reasoning for rejecting both is

neither clearly articulated, nor supported by the record, I recommend a finding that the determination of no disability is not supported by substantial evidence.  Based upon the foregoing it is hereby

RECOMMENDED that plaintiff's motion for judgment on the pleadings be GRANTED, the Commissioner's finding of no disability VACATED, and the matter REMANDED to the agency with the directed finding of disability for the sole purpose of the calculation of benefits.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties by regular mail.

Dated:      September 29, 2005
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

-35-